Antonio **LOPEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 43739.

Court of Criminal Appeals of Texas.

June 16, 1971.

———◆———

Abel Toscano, Jr., Harlingen, for appellant.

Oscar McInnis, Dist. Atty. and Servando H. Gonzales, Jr., Asst. Dist. Atty., Edinburg, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for rape; the jury assessed the punishment at 20 years.

The evidence, viewed most favorably to the jury's verdict, shows that on the evening of June 15, 1969, the prosecutrix, age

15, was raped in Donna, Texas. She was in a car with Ike ————, age 17, and also in the same car was Freddie ————, age 17, and Mary ———— ————, age 15. The car was parked near Donna High School when a police officer came by and found Ike and Freddie drinking beer. He took all four of the occupants of the car to the police station and charged the two boys with the possession of alcoholic beverages by a minor, then brought them back to their car. When Ike tried to start the car he found he had left his keys at the police station and started walking to get them. As he walked down the road, a car containing the four boys involved in this case sped past him almost running him down. He walked a bit further and found two more police officers who gave him a ride to the police station and took him back to his car.

In the meantime, the prosecutrix, Freddie, and Mary were in the car when the car with the four boys drove by and the four boys asked them if there was any trouble and offered to help. The four boys in the other car had some discussion in Spanish which the prosecutrix and those with her did not understand. Then appellant told the prosecutrix and those with her that he and the other three boys wanted to have sexual intercourse with the girls in the car. Freddie replied, "There are no girls around here like that." Appellant then said, "Well, what about those two in the car." Freddie replied, "Sorry, but they don't." The four boys who had been speaking Spanish began hitting the hood of the car with a set of jumper cables. The appellant and another boy forcibly pulled the prosecutrix out of the car and threw her on the hood and one of them pulled off the shorts she was wearing and the appellant tore off her panties. One of them then raped her there on the hood. They pulled the prosecutrix into a nearby cotton field and two others raped her. Freddie tried to stop the four boys but they pushed him back and hit him with the jumper cables and told him they had a pistol and would kill him if

he got out of the car. At this time the police approached bringing Ike back to the car. The appellant and two of the other boys got in their car and left. The appellant was the only one of the four who did not have sexual intercourse with the prosecutrix.

Police chased down the car and arrested the three boys inside. The prosecutrix testified that appellant ripped her panties off; that he ordered her to kiss him or he would whip her with a bull whip; that while this conversation was transpiring the other three boys were pushing each other around and fighting over who was going to be first; that she asked them to leave her alone; that after the rape on the hood that two of the boys dragged her out into the field and she was raped again; that the appellant told her and Freddie that if they told anyone about what happened they would kill all of them. She also testified that she was a virgin at the time of the rape, and that the rape caused her great pain.

The appellant testified that he did not assent to the rapes and tried to prevent the others from raping both girls.

The appellant's first three grounds of error challenge the admissibility of the in-court identifications, claiming they were tainted by a pre-trial identification. At the trial, the appellant was identified as one of the boys involved by the prosecutrix, Freddie and Mary. The State did not at any time during the trial make reference to any "out-of-court" identification.

Before the prosecutrix was allowed to identify the appellant, a hearing was held upon the appellant's motion, outside the presence of the jury, to determine the admissibility of her identification. It was established that about three weeks prior to trial a hearing on a writ of habeas corpus was held in which she was present. At this hearing she identified the appellant. The other three boys involved were not present. There was no lineup; the procedure used was that prosecutrix was asked if she could

identify the appellant, and she did so. At the conclusion of the hearing, the court denied the appellant's motion for mistrial and when the complaining witness identified the appellant in the presence of the jury, the court denied the appellant's objection to her identification.

Freddie also identified the appellant as the one who pulled the prosecutrix from the car. He also testified that the appellant told Mary he would protect her and Freddie if she would kiss him; she then kissed him.

Mary identified the appellant as one of the four boys and as the one who came to the car and said that the boys wanted to have sexual intercourse with the girls and as one of the boys who pulled the prosecutrix from the car and that the appellant pulled off the prosecutrix's panties.

■ No objections were made to either of these witness' testimony. Therefore, any error is waived. Macias v. State, Tex.Cr. App., 386 S.W.2d 534; 5 Tex.Jur.2d 61, Sec. 39.

■ The appellant himself testified that his friends raped the prosecutrix, first on the hood of the car and then in the cotton field. Other witnesses testified, without objection, that the appellant (1) told the occupants of the car that the boys wanted to have intercourse with the girls; (2) pulled the prosecutrix out of the car; (3) and tore off the prosecutrix's panties. Since these facts to which the prosecutrix testified were established either by the appellant himself or by other witnesses without objection, the appellant is in no position to complain of the testimony by the prosecutrix. Hardy v. State, 170 Tex. Cr.R. 253, 339 S.W.2d 899; Flores v. State, 167 Tex.Cr.R. 91, 318 S.W.2d 663;

Gonzales v. State, Tex.Cr.App., 389 S.W.2d 306; 5 Tex.Jur.2d 704, Sec. 46.

■ As for the matters to which the prosecutrix testified which were not established by other testimony, the court properly held a hearing to determine whether the in-court identification was tainted by an illegal pre-trial identification. During that hearing, no evidence was adduced that the previous identification was invalid because counsel was not present. See: Martinez v. State, Tex.Cr.App., 437 S.W.2d 842; United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. In fact, later testimony indicated that counsel was present. Thus, it would not be an abuse of discretion for the court to find that counsel was present and the identification was valid.

■ But even if the identification were invalid, it would not be an abuse of discretion for the trial court to conclude that the in-court identification was not tainted. Applying the criteria suggested in Martinez and Wade,[1] there was sufficient evidence to find the prosecutrix's identification was of independent origin. Martin v. State, Tex.Cr.App., 449 S.W.2d 257. See: Evans v. State, Tex.Cr.App., 444 S.W.2d 641.

■ The court obviously concluded that the prior identification was not tainted and no objections were made to the failure of the court to follow the procedure outlined in Martinez, to-wit, to enter written findings or state into the record his reasons for admitting the evidence. Thus, the appellant may not complain of the procedure used. Spencer v. State, Tex.Cr. App., 466 S.W.2d 749.[2]

---

1. "(1) prior opportunity of the witness to observe the alleged criminal act; (2) the existence of any discrepancy between any pre-lineup description and the actual appearance of the accused; (3) any identification prior to the lineup of another person; (4) the identification by picture prior to the lineup; (5) failure to identify the accused on a prior occasion; and (6) lapse of time between the act and the identification."

2. Again we point out that the *proper procedure* is to file written findings of fact and conclusions of law.

The appellant's grounds of error one, two, and three are overruled.

The appellant's fourth ground of error complains because the court did not charge the jury on the law of the "in-court identification." Parts of his requested charge were as follows:

"Now, therefore, if you find from the evidence beyond a reasonable or if you have a reasonable doubt thereof that the pre-trial identification held aproximately 3 or 4 weeks prior to this date was in absence of defendant's counsel and conducted without notification to defendant's counsel or without knowing, intelligent waiver by defendant of such counsel, you will not consider such identification for any purpose."

Under Martinez, Wade, and Gilbert, it is for the trial court to determine the admissibility of the in-court identificaton. The court determined the identification to be admissible. Under the facts of this case, no charge to the jury was required.[3]

Appellant's fourth ground of error is overruled.

The appellant's fifth and sixth grounds of error complain of the admission into evidence of a statement taken from the prosecutrix the day after the incident. His grounds of error complain because the court did not limit "the purpose by proper instruction" and because the statement "contained matters not otherwise testified to or being otherwise admissible."

No mention of the statement was made on the State's direct examination. In fact, the first mention of the statement came on the appellant's cross-examination of the witness. The appellant's counsel inquired into the statement extensively, questioning the witness about alleged inconsistencies in her story. Excerpts from this cross-examination are as follows:

"Q Yet, you tell us today, that today, three months and several days after it happened, never having named the Defendant before as having said that, but yet, on one day after the incident happened when you gave a statement to the police and to Mr. McInnis and under oath, you didn't tell him that this Defendant said that to you; did you?

"A As I already said, I didn't know I was supposed to go into fine details. Nobody told me I was.

"Q All right. After someone said that— by the way, in your statement you never even said that no one said such a thing. You didn't even say that. You didn't say that they told me that they wanted to do this to us, much less, Antonio, or the fat one, or the tall one said they wanted to do that to us. You left that completely out. Why? Because it didn't happen; isn't it?

"A It did, too.

\* \* \* \* \* \*

"Q You went into detail who had the beer. Now, in more detail, I don't know what you would have gone into, but certainly if a man comes up to you and tells you these people want to do this to you, it would appear to me that it would be one of the things that you would be telling in a statement, if it did happen, but it didn't happen. It is just a figment of your imagination; isn't it?

"A No.

"Q It is not?

"A No, it is not.

---

3. We note that the requested charge mentions nothing of finding whether the in-court identification was tainted or of independent origin if the pre-trial identification were found to be invalid. Thus, it does not state the law properly even if it were a jury question.

"Q Then, who is lying? You now, or you on June 16th?

\* \* \* \* \* \*

"Q 'Two of the boys ripped my shorts and panties off and then they pulled me against the hood of Ike's car and one of the boys had sexual intercourse with me'. Now, you see here you are going in generalities. You are saying—you are not saying this man. The one without a shirt. The one with the bushy hair. The one with the soft voice. The one that couldn't speak the English language. The one that was limping around. The one with glasses on. You see these little details? Now, you say they, 'Two boys pulled my shorts'. Which two boys?

"A Again it was that boy without the shirt and the Defendant.

"Q This Defendant?

"A Yes sir. That Defendant.

\* \* \* \* \* \*

"Q 'They took my shorts and panties off'. They. They. You are not talking about one here like when you say one held my legs, or one did this or the other. You say 'they'. I want to know who besides this man, or the fellow, that took your clothes off.

\* \* \* \* \* \*

"Q You were asked what was he, the Defendant, doing all the time you were being abused by these other people and you said nothing. Just standing there going from one place to his car, or something like that.

I mean, that is not what you read. Did you answer that like that?

"A I answered that he was walking between the cars and talking to his friends in Spanish.

\* \* \* \* \* \*

"Q I see. But, whether you know about it or not, through your own, because of what you saw or heard, have you since then learned that he was at one time talking to Mary ——— and to her boy friend?

"A Yes.

\* \* \* \* \* \*

"Q Did you also learn that part of the time that this thing, this terrible thing that was going on, he was sitting in his car there pleading with some of those boys not to do these things to you?

\* \* \* \* \* \*

"Q And, I see here that you are telling us under oath today that he did all of these things, yet, one day after it happened you were not able to identify this man enough to tell the District Attorney that the fat fellow, short fellow, pock-marked fellow, light complected fellow, crippled fellow, done it. You couldn't tell him that?"

Clearly, this questioning was an attempt to impeach the witness through the earlier statement.[4]

Then, on re-direct, the statement was admitted into evidence.

When the appellant questioned the witness regarding the statement, the State was

4. The appellant cites a number of authorities for the proposition that "A witness who has not been impeached nor sought to be impeached cannot legally be bolstered up by proof that he made the same statement to another person that he testified to on the trial." 1 Branch's Ann.Penal Code, 227 Sec. 203. In the cases he cites, the *specific statement* or instrument admitted had not been the subject of the cross-examination, thus, the door had not been opened to an explanation of that statement under Art. 38.14. Since this is not a case where there was merely a "vigorous cross-examination," with a previous consistent statement used to bolster the witness's testimony, those cases do not apply here. See: Acker v. State, Tex.Cr.App., 421 S.W.2d 398.

allowed to introduce that statement into evidence. Art. 38.14 Vernon's Ann.Code of Criminal Procedure; Taylor v. State, Tex. Cr.App., 420 S.W.2d 601; Mabou v. State, Tex.Cr.App., 429 S.W.2d 891.

■ Since no request for instructions on "limiting the purpose" of the statement was made, that question is not before us for review. Art. 36.14, Art. 36.15, Code of Criminal Procedure.

The appellant's fifth and sixth grounds of error are overruled.

■ The appellant's seventh ground of error challenges the court's charge on the law of principals, contending that it shifted the burden of proof from the State to the appellant. The court charged as follows:

"All persons are principals who are guilty of acting together in the commission of an offense. When an offense is actually committed by one or more persons, but others are present and, knowing the unlawful intent, aid by acts or encourage by words those actually engaged in the commission of the unlawful act, such persons so aiding or encouraging are principals and may be prosecuted as such. Mere presence alone will not constitute one a principal.

"Therefore, if you find from the evidence beyond a reasonable doubt that in the County of Hidalgo, Texas, on or about the 15th day of June, 1969, Rogelio Marquez, Jaime Carrasco, and David Sanchez, or either of them, made an assault in and upon —————— (prosecutrix), a woman, and did then and thereby force or threats or by a combination of force and threats, violently ravish and have carnal knowledge of her, the said —————— (prosecutrix), without her consent and against her will, and that the Defendant, ANTONIO LOPEZ, was then and there present at the time and place of the rape and knew of the intent, if any, of the said Rogelio Marquez, Jaime Carrasco, and David Sanchez, or either of them to rape the said —————— (prosecutrix), and aided by acts or encouraged by words those actually engaged in the commission of the rape, then you will find the Defendant, ANTONIO LOPEZ, guilty of rape.

"Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant.

"You are further instructed that the mere presence of Defendant, ANTONIO LOPEZ, at the scene of the alleged rape would not constitute him a principal, and if you should find from the evidence beyond a reasonable doubt that Rogelio Marquez, Jaime Carrasco, and David Sanchez, or either of them did make an assault in and upon —————— (prosecutrix), a woman, and did then and there by force or threats or by a combination of force and threats, violently rape and have carnal knowledge of her, the said, —————— (prosecutrix), without her consent and against her will, and the Defendant, ANTONIO LOPEZ, was present, but you further find and believe from the evidence, or have a reasonable doubt thereof, that the Defendant, did not aid by acts or encourage by words those actually engaged in the commission of said rape, then you will find the Defendant, ANTONIO LOPEZ, not guilty."

This charge did not, as the appellant contends, "condition an acquittal upon the belief of the jury that the Defendant was innocent instead of the sufficiency of the evidence to establish his guilt beyond a reasonable doubt * * *"; it did not place upon him the burden of showing that he was not a principal. We note the words *"or have a reasonable doubt thereof,* that the Defendant, did not aid by acts or encourage by words those actually engaged in the commission of said rape." (Emphasis added). This charge correctly places upon the State the burden of proving the appellant was a principal beyond a reasonable doubt. Art. 38.03, V.A.C.C.P.; Art. 9, Vernon's Ann.Penal Code.

The appellant's seventh ground of error is overruled.

Lastly, the appellant challenges the sufficiency of the evidence. In view of the testimony already discussed, the evidence is sufficient for the jury to find that the appellant was a principal to the crime of rape. Art. 65, Art. 66, Art. 67, Penal Code.

The appellant's eighth ground of error is overruled.

There being no reversible error, the judgment is affirmed.