James Richard BLASSINGAME, Appellant,

v.

The STATE of Texas, Appellee.

No. 44572.

Court of Criminal Appeals of Texas.

Feb. 23, 1972.

Rehearing Denied April 5, 1972.

Bill W. Bailey, De Soto, for appellant.

Henry Wade, Dist. Atty., John B. Tolle and Edgar A. Mason, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The offense, robbery by assault; the punishment, fifty years imprisonment.

At approximately 8:00 p. m. on the night of October 20, 1969, an individual identified as the appellant, entered Jameson's Pharmacy in Oak Cliff, brandishing a double-barrel shotgun. After directing the employees to the area near the prescription case at the rear of the store, he told them to "freeze." He then instructed the pharmacist on duty, Bob Mink, to "get to work

on that safe. Get me all your money and all your narcotics." While the appellant was there, four people entered the store. One of those was a delivery boy for another pharmacy; he too was ordered to the rear of the store. The second person to come in · was an unidentified customer. After being told by the appellant to wait on the customer, one of the other employees, Bill Grimes, went to the front of the store in compliance. The person was assisted and left the store, apparently unaware that any offense was taking place. Then an off-duty employee, Sheila Urick, and her husband came into the store to purchase some medicine.

By that time Mink had taken all the coins, approximately $150.00 in rolled pennies, nickels, dimes and quarters, and all the narcotics from the safe. The appellant told Mink to bring them to him, which he did. The appellant then requested a sack. Mink said, "I'll get you one right under here," and reached across a small space between the top of the counter and some file cabinets. When he did so the appellant told him that if he ever "made a move like that he would blow [him] in half or in pieces or something like that." Another employee handed him a sack and the appellant sacked up the narcotics and rolls of coins. In leaving the store appellant encountered Mrs. Urick and her husband. While Mrs. Urick was standing at a display rack picking up a bottle of "Dristan" the appellant came around the partition which stood between two of the aisles and confronted her. He had a double-barrel shotgun and a sack in his hand. With the shotgun "about three or four inches" away from Mrs. Urick, he told her to "freeze" also. He then started to back out the door and left after making the statement, "Wait five minutes, anybody that follows me out this door is going to be a dead m_____ f_____."

Bonnie Rich, a twelve-year-old girl was in her father's office, which is located across a paved drive at the side and rear of Jameson's Pharmacy, on the night of

October 20, 1969. At about 8:00 p. m. Bonnie Rich observed a parked car in the drive. The motor was running and there was a woman behind the wheel. She stated that the car which she thought was a convertible, was red with a white top and that the rear window was "all torn out." She saw a man leaving the shopping center by way of the short flight of steps adjacent to the pharmacy. He was "running sort of fast." The witness testified that he was wearing some black gloves and carrying "a rifle." She testified that she did not know the difference between a shotgun and a rifle, that she meant rifle as opposed to a pistol, and that the weapon "was long." She also stated that he had a sack that he dropped. She heard "some stuff" hit the asphalt and saw the man then pick up the sack. She stated that it was a white man and he got in on the passenger side of the automobile. He then crawled in the back seat and started pointing the gun at Bonnie Rich and her younger brother through the torn-out window in the back of the car. The two people drove off in the automobile. Where the sack had been dropped the girl and her brother found a roll of pennies and a bottle containing what was later shown to be narcotics.

■ Appellant's first ground of error alleges "The trial court erred in refusing to grant appellant's motion for mistrial because of the highly prejudicial nature of the questions asked of the State's witness, Bobby J. Mink, by the State's attorney, particularly in view of appellant having filed a motion in limine in an attempt to avoid same." Appellant's motion in limine which sought to exclude any testimony regarding the narcotics taken by appellant had been overruled. The evidence showing the taking of narcotics in the robbery was properly admitted. The fact that the indictment, which might have alleged, did not allege the narcotics to be part of the fruits of the robbery did not render evidence of their taking inadmissible. Where the offense is one continuous transaction, or another offense is a part of the case on

trial or blended or closely interwoven therewith, proof of all the facts is proper. 4 Branch's Ann.P.C., Sec. 2255, p. 618 (2d ed. 1956); Barber v. State, 462 S.W.2d 33 (Tex.Cr.App.1971); Spencer v. State, 164 Tex.Cr.R. 464, 300 S.W.2d 950 (1957); Earnest v. State, 109 Tex.Cr.R. 588, 6 S.W. 2d 756 (1928).

Appellant's second ground of error complains that the witness Mink's in-court identification should not have been allowed. It is contended that Mink's confrontation with the appellant at a lineup shortly after the time of the offense was "so unnecessarily suggestive and conducive to irreparable mistaken identification that appellant was denied due process of law . . . ." The record reflects that the appellant signed a written waiver of his right to counsel at the time of the lineup. This is not attacked. Reliance is had, however, upon Palmer v. Peyton, 359 F.2d 199 (4th Cir. 1966). As in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967):

> "We turn now to the question of whether petitioner, although not entitled to the application of *Wade* and *Gilbert* to his case, is entitled to relief on his claim that in any event the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. This is a recognized ground of attack upon a conviction independent of any right to counsel claim." 388 U.S. at 301–302, 87 S.Ct. at 1972.

■ Once the issue of identification was raised, the jury was dismissed, and a full hearing was held in their absence. See Martinez v. State, 437 S.W.2d 842, 848 (Tex.Cr.App.1969). The court determined that the pretrial identification was not in violation of the requirements of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) or constitutional due

process requirements. It was shown that the witness Mink had ample opportunity to observe the appellant at the time of the commission of the offense. At the time the appellant was arrested, approximately three hours after the robbery, he was wearing ankle-length "rough-out" boots and blue jeans which coincided with witnesses' observations and statements made earlier to the police. Appellant's physical features corresponded to those related by the witness to the officers earlier. Witness Mink testified that he immediately recognized the appellant when he and the other three people walked into the room for the lineup. When asked, "Is your ability to point the finger at this defendant influenced any way by your having viewed that lineup that you have just been talking about?" he responded, "No, sir, I don't think so. . . . I would say no." When asked, "Are you able to say that this is the man who robbed you, the defendant, because of viewing the defendant at the time and place where you were robbed?" Mink stated, "Yes, sir, I got a real good look at him." The witness also testified that he could "pick him (appellant) out of a Cotton Bowl crowd." We are in agreement with the finding of the trial court,

". . . that the witness, Mr. Mink, has identified the defendant in this case as being the same person that committed the offense alleged in the indictment and that this in-court identification was not influenced by his having viewed the defendant in a lineup the following day, and that the in-court identification was based solely upon this witness having viewed him at the time and place alleged in the indictment."

It was further determined out of the presence of the jury that the witness Sheila Urick had made an in-court identification of the appellant which was of independent origin and which was not tainted by the lineup she had attended. Mrs. Urick's identification of the appellant at the lineup and at the trial is not challenged on appeal.

Appellant's second ground of error is overruled. See Lopez v. State, 468 S.W.2d 365 (Tex.Cr.App.1971); Spencer v. State, 466 S.W.2d 749 (Tex.Cr.App.1971); compare Proctor v. State, 465 S.W.2d 759 (Tex.Cr.App.1971).

Appellant's third ground of error complains of the admission into evidence of State's Exhibit 14, which was the bottle of narcotics, found by Bonnie Rich and her brother on the night of the offense at the place where the appellant dropped the sack while fleeing from the scene. It is contended that the narcotics were not properly identified. The witness Mink, through the use of an identifying tag on the bottle, identified it as one having come from Jameson's Pharmacy. This constituted sufficient identification of the narcotics to permit their admission into evidence as a part of the fruits of the crime. See Rhodes v. State, 427 S.W.2d 889 (Tex.Cr. App.1968); Columbus v. State, 409 S.W.2d 400 (Tex.Cr.App.1966). This ground of error is overruled.

In his fourth ground of error the appellant urges that State's Exhibits 15a and 15b "were not properly identified as being the same articles worn by the robber at the time of the robbery" and should therefore have not been introduced into evidence. These exhibits were the black gloves alleged to have been worn at the time of the commission of the offense and which were observed by Mink at the time of the robbery and the witness Rich as the appellant was leaving the pharmacy. The testimony that the gloves looked "exactly like" those seen on the appellant and the evidence that the gloves were found in the trunk of appellant's car within three hours after the robbery rendered them admissible. Alexander v. State, 476 S.W.2d 10 (Tex.Cr.App.1972); Alejandro v. State, 394 S.W.2d 523 (Tex.Cr.App.1965).

In his fifth ground of error the appellant complains of an indirect violation of that part of the motion in limine which was granted that precluded the State's

making reference to any prior offenses committed by the appellant. It is argued that the following question was such a reference. "I will ask you if you saw a person in that 7 to 12 lounge whom you knew?" Later, the arresting officer was asked further, "Do you see the person that matched that description whom you knew in the courtroom today?" There was no objection to either of the above questions or the answers given in response. The error, if any, is not preserved. Stevenson v. State, Tex.Cr.App., 456 S.W.2d 60 (1970); Merx v. State, 450 S.W.2d 658 (Tex.Cr. App.1970).

In appellant's sixth ground of error it is urged that remarks made by State's counsel in his closing argument were so prejudicial as to require reversal. The record reflects the following colloquy:

"MR. SCOTT (Prosecuting attorney): That was my decision as the prosecutor in this case not to bring every single eye witness down here.

"MR. BAILEY (Defense counsel): I'm sorry, Mr. Scott. I don't mean to interrupt, but again, this is direct testimony that there are other witnesses that can identify this defendant.

"THE COURT: Sustained.

"MR. BAILEY: We ask for a mistrial again because of evidence which is not in the record.

"THE COURT: Overruled.

"MR. SCOTT: Those things were listed. They were brought out right off the bat. Other people [were] in that store and if the defendant had wanted to call them, he could have subpoenaed them down here. If he didn't think they could all identify him, you better believe he would have, too.

*    *    *    *    *    *

"MR. BAILEY: Excuse me again. I'm terribly bad—I believe that the statement that if the defendant had wanted to and if he didn't think these people could

have identified him, that he could have called them down here. I believe that is a prejudicial statement.

"MR. SCOTT: I submit it's a reasonable deduction from the evidence.

"MR. BAILEY: That's Mr. Scott's deduction from his own opinion and this is evidence again, not in the record, and again we ask for a mistrial based on the comment that there are other witnesses who could have and would have identified this man but they were not called by them or were not called in the negative sense by this man.

"THE COURT: Overruled."

■ Where remarks of counsel are said to have been so prejudicial as to require reversal of an appellant's conviction by this court, we consider not only the remark itself, but also the entire context in which it appears. In so doing in the immediate case we note that prior to the above statements by the prosecution a similar reference was made wherein it was stated, "I mean all we had are about eight eye witnesses out there." After objection was then sustained, no request was made that the jury be instructed not to consider the remarks and no such request was made in connection with the above statements.

■ This court is not inclined to grant a new trial where the error could have been alleviated by curative instructions and the record reflects no request therefor. Dorsey v. State, 450 S.W.2d 332 (Tex.Cr.App.1969); Barton v. State, 89 Tex.Cr.R. 387, 230 S.W. 989 (1921). Further, the issue of identity had been determined, and the prosecution's remarks supplied no new fact which would have led to conviction. The record reflects that there were several eye witnesses who were not called to testify at the trial. Appellant's sixth ground of error is overruled.

Appellant's ground of error number 7 fails to meet the requirements of Article 40.09, Section 9, Vernon's Ann.C.C.P.,

however, if properly before us for consideration, it does not reflect error. The court's failure to submit to the jury appellant's requested charge relating to mistaken identification is not raised by the evidence. The evidence raised the issue of alibi and a jury instruction on the defense of alibi was properly submitted to the jury.

The judgment is affirmed.

Opinion approved by the Court.