In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00062-CR
______________________________


BOYDE RANDALL FIELDS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 183rd Judicial District Court
Harris County, Texas
Trial Court No. 911439


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            On her day off work, S.B.'s mother, Amanda, examined files stored on the computer in S.B.'s
room. To her horror, Amanda discovered photographs of Boyde Randall Fields, then Amanda's
husband, engaging in intercourse with S.B., then thirteen years of age. When Amanda confronted
S.B. with her discovery, S.B. began crying and stated she had not wanted to engage in intercourse
with Fields.    In custody, Fields gave a written statement wherein he admitted touching S.B.'s
vagina and anus with his penis and taking pictures of the assault. Fields also admitted in a written
statement he had given S.B. a wine cooler and had engaged in intercourse with her. S.B. testified
Fields began touching her when she was ten or eleven years old. She testified he penetrated her
vaginally on two occasions, one in July 2001 and another in August 2001.


 S.B. feared getting in
trouble and being hurt by Fields if she were to tell anyone of the assaults. 
            Fields pled guilty to the offense of aggravated sexual assault of a child; and, after punishment
was tried to a Harris County jury, Fields was sentenced to forty years' confinement and a fine of
$10,000.00.
            In his sole point of error, Fields complains he was denied a fair trial by an impartial jury
when the trial court overruled his objection to the State's jury argument. He contends the State's
closing argument went beyond a plea for law enforcement and, instead, called on the jury to abandon
its objectivity. Fields bases his contention on the following exchange:
[State]: When y'all go home and you hear stories about somebody who
commits this kind of crime, who not only touches and feels on a child, but sexually
assaults her in her own home, right in front of her gerbil cage, on the first big-girl
sheets that she's gotten from her mom's hand-me-down, when somebody does that
and that is the core of our society and rips the heart out of a little 13-year-old girl who
should be interested in talking on the phone and the new school band and take that
away from her, you have done something that is so utterly destructive that it cannot
be fixed.
 
So, when you think about what is our worst nightmare? What is the scariest
thing that–
 
[Defense]: I object, Your Honor. This is all just inflammatory. She's way
out of the record. It has nothing to do with the summation of the evidence. Strictly
to inflame the passions of the jury, Your Honor.
 
                        THE COURT: Overruled.
. . . . 
[State]: When y'all hear about those sorts of things you realize that that's
exactly what we think about when we're at home. When you're at home and you've
gotten your children to bed and–
[Defense]: I object again. This is all inflammatory, trying to enrage the jury
as far as their children. There's nothing as far as evidence. This is completely out of
the record.
 
THE COURT: This is argument. You may proceed.
[State]: When you think about being in your home and the dangers out there,
how to protect your children, how to protect your grandchildren– 
 
[Defense]: Your Honor, this is an improper plea for law enforcement, how
to protect your children. It has nothing to do with this case. It has nothing to do with
the summation of evidence in this case, Judge.
 
THE COURT: It's overruled.
                        [Defense]: It's purely an–
                        [State]: When you hear that–
                        THE COURT: Let him finish his objection.
                        [Defense]: –to inflame the passions and prejudice this Defendant.
                        THE COURT: It's overruled.
            The State then concluded final argument:
[State]: When you're at home and you're in that situation and you turn on the
news and you hear a story about a child who's been violated, and you hear about how
that violation goes on and on and in this internet age, how that violation goes on
indefinitely to the end of time, and you're sitting there on your sofa, and you think,
my goodness, somebody has to do something about this. This cannot happen. We
cannot have this danger on our streets. Somebody has got to do something. 
Somebody has got to stop it somehow.
 
Ladies and gentlemen, today you're the jurors and you're serving your country,
and you are serving your city of Houston and your County, and you're serving all the
people there and you're that somebody who has got to protect the rest of us. You're
that somebody who has got to do something. You're the person you think about
when you watch the news. And, ladies and gentlemen, go back there and do your
job. Go back there and find that he needs to spend his life in prison. Find that he
needs to pay a 10,000-dollar fine because that sends a message. It sends a message
to everybody out there. It sends a message that this kind of thing is not tolerated. We
won't take the danger in our society, and you have life in prison. Go back there and
do it because we know y'all can. You've told me you could. And this is exactly the
kind of evidence that warrants life in prison and a 10,000-dollar fine.

            Proper jury argument includes four areas: 1) summation of the evidence presented at trial,
2) reasonable deductions drawn from that evidence, 3) answers to opposing counsel's argument, and
4) pleas for law enforcement. McFarland v. State, 845 S.W.2d 824, 844 (Tex. Crim. App. 1992). 
We must consider counsel's remarks during final argument in the context in which they appear.
Denison v. State, 651 S.W.2d 754, 761 (Tex. Crim. App. 1983); Blassingame v. State, 477 S.W.2d
600, 604 (Tex. Crim. App. 1972).
            The State draws comparisons between the jury argument in the instant case and that in
Tejerina v. State, 786 S.W.2d 508 (Tex. App.—Corpus Christi 1990, pet. ref'd). In Tejerina, the
State made the following remarks in the final argument of the guilt/innocence phase of trial:
I ask you to send her a message and anyone else out there who might be
contemplating this same kind of activity, that you intend to protect our people,
protect our citizens, and our children here in Goliad County. And the way to let her
know that is to vote guilty on Verdict Form Number 1.
. . . .
And if I have any regret in this case, if I didn't do something that I should
have from your standpoint or if I did something that you didn't like, well I'm sorry
because I would like to think I did everything I could to bring that dope seller to
justice and put her someplace so that some young citizen or high school student or
other person will not be exposed to that sort of thing in the future.



 
Id. at 511 (emphasis added). The court concluded that these remarks amounted to a plea for law
enforcement and a response to defense counsel's argument and, thus, were proper. Id. at 512.
            Similarly, the State relies on Smith v. State, 846 S.W.2d 515 (Tex. App.—Houston [14th
Dist.] 1993, pet. ref'd). The State made the following comments in Smith:
You want to do the easy thing but I'm asking you to do the right thing,
according to the law and evidence.
 
How many times have you been out on the streets? You know what it's like
out there. There is an ongoing fear in our community. You try to lock your house,
your windows, your cars. You worry about your family's safety because that's the
way the things are because of the crime.
 
You often hear people say, "What are they doing down there at the
courthouse? The whole system has gone crazy. What are they doing down there that
it's gotten this way?" Well, today, folks, you are the "they," so don't be fooled by
argument by the defense. They're always going to argue, "It isn't enough." They're
always going to want a thousand pounds of evidence, even when we meet what is
necessary. Use your common sense. Please use your power wisely.

Id. at 517. Although the court concluded the point of error was not properly before the court since
defense counsel objected to the remark on different grounds at trial than those asserted on appeal,
the court concluded that, even if the point had been properly presented, Smith's contention would
have been overruled. Id. at 518. These remarks encouraged the jury to do something about crime
and was constituted a proper plea for law enforcement. Id. (citing to Haynes v. State, 627 S.W.2d
710, 714 (Tex. Crim. App. 1982); Holloway v. State, 525 S.W.2d 165, 170 (Tex. Crim. App. 1975);
Brown v. State, 508 S.W.2d 91, 96 (Tex. Crim. App. 1974); Williams v. State, 630 S.W.2d 866, 867
(Tex. App.—Houston [1st Dist.] 1982, no pet.)).
            Fields, however, looks to Brandley v. State, 691 S.W.2d 699 (Tex. Crim. App. 1985), rev'd
on other grounds, 781 S.W.2d 886 (Tex. Crim. App. 1990), to support his contention that the State's
argument was improper. In Brandley, the prosecutor stated, "it is fair for you to think about the
feelings of the father who lost his baby daughter and it is fair for you to think about how you would
feel if you lost your children in considering . . . ." Id. at 712 (emphasis added). The defense objected
at that point, and the trial court sustained the objection, instructed the jury to disregard the argument,
and overruled Brandley's motion for mistrial. Id. The Texas Court of Criminal Appeals concluded
that this portion of the State's argument did not fall into any of the four permitted areas of proper jury
argument and represented a plea for the jury to abandon its objectivity. Id. 
            Fields also compares the argument before us to the argument made in Boyington v. State, 738
S.W.2d 704 (Tex. App.—Houston [1st Dist.] 1985, no pet.). The State in Boyington stated:
This is called a punishment hearing. That is why you are here today. If you
are going to go back there and show leniency, that's fine. But please have a good
reason for it. Because what would you do if this happened to your family? You
know, all of you have got families here and you have got kids and you have got a
home. How would you feel if your home was firebombed one night and you saw
your children on fire? What do you think should happen to a person like Barron Lee
Boyington, that does something like that? And it is your opportunity to say, "Barron
Lee Boyington, you have no right to do what you did to that Anderson family, and
we aren't going to put up with it." So please put yourself in that place when you are
deciding this. Put yourself in the place of that Anderson family and imagine that was
your family that was firebombed in the middle of the night. Imagine that it was your
son that has his legs on fire. Imagine that it was your home that was burned out. 
Would you want mercy shown? Would you want leniency shown? . . . .
 
And please keep in the forefront of your mind just like it was your family that
received the fire bomb and you are in a den at 3:00 a.m. on a hot summer evening. 
Keep that in the forefront of your mind and just think what you would want to
happen in that situation. 

Id. at 709. The court concluded Boyington's trial counsel was ineffective by failing to object to the
several instances of improper jury argument. Id.
            We distinguish both Brandley and Boyington. In both of those cases, prosecutors urged the
jurors to assess the same punishment as they would want assessed had the defendant committed the
same wrong against them. Here, the State asked the jurors to protect their children, as well as the
rest of the community, from offenders such as Fields. Such argument, in its overall context,
represents a proper plea for law enforcement. See Smith, 846 S.W.2d at 517; Tejerina, 786 S.W.2d
at 513.
            We do not approve of the State's argument to the extent it invoked protection of the jury
members' children. But we are to consider the State's remarks in their context. As the State
continued its final argument to the jury, it became increasingly clear that counsel's remarks
constituted a proper plea for law enforcement. The State referred to "dangers on our streets," "your
country," "your city of Houston," "serving all the people," "somebody who has got to protect the rest
of us," "our society." Similarly to the arguments in Smith and Tejerina, the State's comments
regarding the jurors' children fell within an overall context that urged community safety and
protection from the type of offense committed by Fields.
            Even if the State's argument fell outside the four permissible areas of jury argument, the
judgment still must be affirmed, because any error in allowing the State's argument was harmless. 
Improper jury argument is nonconstitutional error reviewed under a substantial-rights analysis. See
Tex. R. App. P. 44.2(b). A criminal defendant's substantial right is affected, and reversible error has
occurred, if the error had "a substantial or injurious effect on the jury verdict." Morales v. State, 32
S.W.3d 862, 867 (Tex. Crim. App. 2000). We analyze the harm from improper jury argument by
considering the following factors: (1) the prejudicial effect of the misconduct, (2) the curative
measures taken by the court, and (3) the certainty of conviction without the misconduct. Martinez
v. State, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000). The trial court allowed the prosecutor's
argument without any curative measures. This matter involves punishment for offenses to which
Fields pled guilty. Therefore, we examine the prejudicial effect, if any, of the challenged argument
on Fields' punishment. Cifuentes v. State, 983 S.W.2d 891, 896–97 (Tex. App.—Houston [1st Dist.]
1999, pet. ref'd). 
            The State asked the jury to impose a life sentence. Fields asked the jury to assess punishment
on the lower side of the scale. The range of punishment for this offense was five to ninety-nine years
or life. See Tex. Pen. Code Ann. § 12.32 (Vernon 2003). The jury refused to assess the maximum
or close to the maximum sentence. It appears that, although the sentence assessed was forty years,
that sentence was closer to the bottom than to the top of the range of punishment. Therefore, even
if the State's argument overall was improper, any prejudicial effect of the argument on the jury's
assessment of punishment is not apparent. See Cifuentes, 983 S.W.2d at 896–97 (jury assessed
punishment far below State's request).
            For the foregoing reasons, we conclude that allowing the State's final argument to the jury
in the punishment phase of the proceedings did not constitute reversible error. We overrule Fields'
sole point of error and affirm the trial court's judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          November 11, 2003
Date Decided:             December 12, 2003

Do Not Publish