J. B. STEPHENS V. THE STATE.

No. 22900. Delivered June 14, 1944.
Rehearing Denied October 18, 1944.

The opinion states the case.

*Mark Smith* and *R. F. Chapman,* both of Waxahachie, for appellant.

*C. C. Randle,* County Attorney, *Fred L. Wilson,* Assistant County Attorney, and *Forrester Hancock,* Special Prosecutor,

all of Waxahachie, and *Ernest S. Goens*, State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the murder of Jess White, and by the jury he was assessed the penalty of death.

It is shown by the evidence that appellant was an escaped convict, and had been convicted of robbery in Hill County, Texas, on April 17, 1933, and assessed a penalty of 40 years in the penitentiary. In Lubbock County, on September 25, 1933, appellant was again convicted of robbery and given a life sentence in the prison. Again on June 4, 1943, appellant was convicted of robbery by firearms and sentenced to 25 years in the penitentiary.

At the time of the unfortunate incident herein chronicled appellant had escaped from the Retrieve farm where he was being confined as a convict. On the night of this tragedy the peace officers had knowledge of his escape and were on the lookout for him. Appellant had been to Dallas on the day of January 8, 1944, and had requested one Joe Kirk to drive him to Waxahachie to see appellant's mother, he having told Mr. Kirk that he was on parole from the prison and would not have to go back. Mr. Kirk and his wife, together with appellant, had driven to Waxahachie, and had stopped their car near a hospital in a somewhat unusual place. Mr. White had evidently seen this car and had taken its number, and gone to the sheriff's office to check up on the number. It was a Dallas number, and after ascertaining such he left the office, and we next hear from him, as this Dallas car was leaving town, he came up behind it in the nighttime and blew his horn. Appellant told Kirk to stop and see what was wanted, and Kirk did so. He got out and went to the officer's car, and was questioned by White, who finally asked him who that was with him in the car, and Kirk said it was J. B. Stephens. The officer then said "tell him to come back here, I want to see him." Kirk did so, and appellant went back to meet the officer, who searched appellant and found on him a pair of brass knucks, and evidently handcuffed him. He then told Stephens to get in the car and go with him to the police station. The officer's car then passed out of sight, going back into Waxahachie. Soon thereafter Kirk and his wife came upon this car in a ditch turned over and resting on its left side. J. B. Stephens was in this car with an automatic pistol in his hand, and said "Joe, help me out of here." Kirk and his wife immediately left without helping Stephens, and repaired to a nearby house.

Mr. Thorn lived near where this car was lying in the ditch, and was probably the first person at the scene. The left-hand door was a couple of feet above the level of the ground, the car being down in a ditch. Thorn lifted up the door and saw a man in the car, who came up over the steering wheel with a gun in his hands and said: "Let me out or help me out of here"; the gun was a black automatic pistol, and Thorn backed off and slammed the door back down, and with some few people who had gathered at the scene left hurriedly. Mr. Champion heard the crash and went to the wrecked car. He saw a man sitting close to the car, on the outside thereof, who looked like he was hurt, and he advanced toward this man, who said: "Don't come down here," and when Champion got about six feet away such man raised up with a large calibre gun and said: "I told you not to come down here, I'll kill you," and Champion said: "Don't do that. I came down here to help you," and appellant said: "Well, get over there and get those keys and get these handcuffs off my hands." Champion said: "Where are they?" and the man said: "Over there." Mr. Champion finally went away and left appellant on the ground.

Mr. Murdock, who was passing by, approached the wreck. and he and his son went down to the car. He noticed a man just outside the car lying on his left side with something in his hand that looked like a stick but turned out to be a shot gun. This man was the appellant, who said: "I killed one son-of-a-bitch and I'll kill another," and he said: "I killed him," and nodded his head toward the car like that, and said: "I killed him, and I'll kill you," and waved the gun toward Murdock, who grabbed the gun and took it away from appellant, who was handcuffed, and his face covered with blood, and his right leg broken. The right half of the windshield was broken out, and inside the car was Jess White, sitting on the rightside, crouched over in the seat. Mr. White was nodding his head as though trying to speak but could not talk.

Buddy Vinson, an ambulance driver, came up to the scene and parked close to the wreck; he saw a man on the ground about seven feet from the car. As he walked up to the man on the ground that man said: "Get that other guy out of the car," and "that was about the time he snapped the gun. It was a dark looking gun; it sounded like the pistol was snapped, but I don't know that it was not the handcuffs striking against the pistol."

There was a nickel plated 32 calibre gun found near the scene. The dark looking automatic, a 45 Colts, and the shot gun

belonged to Mr. White; evidently the 32 belonged to appellant. Mr. White was shot in the left leg, the bullet ranging downward; he was also shot in the neck by a small calibre bullet which went through the neck and caused his quick death; this wound was powder burned, evidently the bullet having been fired from a gun about four or five inches from the neck. The nickel plated gun had jammed and had other bullets in the magazine. The larger automatic had lost its cartridge clip and was unloaded, but was cocked. Appellant's right leg was broken, and it was evident that he had been shot with the larger automatic. Mr. White did not speak but died on the way to the hospital.

Appellant insists that it was error to admit in evidence proof of his former convictions, bearing confinement of a lifetime in the penitentiary, 40 years and 25 years therein. Evidently this testimony was admitted under the former decisions of this court which will be found collated and discussed in the late cases of Stalcup v. State, 130 Tex. Cr. R. 119, 92 S. W. (2d) 443, and Beard v. State, 171 S. W. (2d) 869. In line with the reasoning set forth in these cases and those therein discussed, we think the evidence of the pending punishments as shown by these previous convictions could be utilized by the State in order to show a motive for this killing. This holding disposes of bills of exceptions Nos. 1, 2, 3, 4, 5 and 6, all complaining of the introduction of such former convictions.

Bill of exceptions No. 7 complains of the State being allowed to show by J. C. Roberts, Record Clerk of the State prison at Huntsville, the entries on said record that evidenced appellant's status as a convict in such prison. It was shown by Roberts that these were public permanent records of the prison correctly kept, and according to a system under the witness' supervision at the prison. We think same was admissible under the different subdivisions of Art. 6166a R. C. S., and Scroggins v. State, 92 Tex. Cr. R. 424; Gaines v. State, 176 S. W. (2d) 315, 20 Am. Jur., p. 908.

Bill of exceptions No. 8 complains of the trial court permitting proof that appellant was an inmate of the State penitentiary, and bill No. 9 complains because the State was permitted to prove that appellant had escaped therefrom. We think it permissible to show such, not only to evidence motive in this homicide, but also to justify the deceased in attempting to retake appellant without having in his possession a warrant. It was decided in the early case of Ex parte Sherwood, 29 Tex. Ct. App. 234, 15 S. W. 812, that the rule of the common law applied in

matters relating to the arrest of an escaped convict, and under that rule either an officer or a private citizen is authorized to arrest an escaped convict without warrant. It therefore follows that the State had the right to prove that appellant was such a convict.

Appellant complains by bill of exceptions No. 10, as well as by objection to the court's charge, as well as by means of a requested special charge, on account of the fact that the trial court failed to instruct the jury on the law of circumstantial evidence. A perusal of the evidence shows that in this cause the final facts of this regrettable tragedy must be shrouded in the silence of the participants herein. Mr. White cannot tell us, and said no word just prior to his decease. Appellant exercised his right to remain silent thereon during this trial. Thus it is true, much of the facts surrounding this killing of a necessity had to be based upon circumstances and a deduction therefrom. Appellant, by inference, would have had the jury to believe that he had been cruelly beaten over the head, but there was no proof thereof save a few scratches on his head, which a witness said could have been made in crawling through a broken windshield of the wrecked car; there was a bullet in his leg, but no explanation thereof was offered nor given; the circumstances of such wound being received by him was left with the jury to be solved only in the realm of speculation. However, aside from this speculation, we do know by proof that this appellant was an escaped convict, with many years confinement awaiting him; that he was rightfully taken into custody by this diligent peace officer, and that within but a short period of the loss of life by the officer, and within a few feet of the dying body he nodded his head towards where the body lay, and speaking to another said: "I killed him, and I'll kill you," at which time he still had a gun in his hands. We think this statement doubtless had weight with the trial court in deciding not to charge upon the law of circumstantial evidence. The State did not rely upon circumstantial evidence alone herein; it had an admission upon the part of appellant sufficiently cogent to show that he admitted the killing of Mr. White, who at such time lay dying within a few feet of appellant. The main fact to be proven was not why nor how Mr. White was killed; it was who killed Mr. White, and appellant's statement was perfectly clear and unambiguous that he had killed him. Other matters and things relative to this transaction were merely ancillary to, useful perhaps, and leading up to the main fact as to the person doing the killing. On that point we are not left to infer from proven circumstances, nor to grope in the dark, but instead we have appellant's own

statement that he was the person who took this life. That such a statement was res gestae of the transaction we have no doubt. See 18 Tex. Jur., p. 310 and cases there cited. The State did not have to rely upon circumstances to show who killed Mr. White; appellant's statement removed such question from the realm of circumstances and furnished direct evidence thereof. We do not think the trial court was called upon to charge upon circumstantial evidence.

Bill of exceptions No. 11 complains because of the fact that the jury trying this case deliberated such a short time in their retirement, and according to appellant's attorneys' calculations the jury consumed only about twenty-five to thirty minutes in their deliberations, thus evidencing "an inflamed mind in arriving at a verdict in such an unreasonable time." The trial court qualified this bill by stating that the jury consumed thirty-five minutes in their deliberations. The short space of time alone is the only reason offered or relied upon to show the condition of the minds of the jurors, and we see no reason to say that such is shown thereby. Appellant had no affirmative defense of any kind. As in law he had a right to do, he did not take the witness stand, and offered but one witness, a doctor, who testified that as county health officer of Ellis County he saw appellant about eight or nine days after this tragedy; that appellant had a broken leg and some little cuts on his forehead; he had been shot in the leg. The abrasions on his forehead were slight; they could have been caused by being hit with a pistol, or could have been caused by crawling through a broken windshield. This was the sum total of the testimony offered by the defense. The State's witnesses were not many, the statement of facts occupying but fifty pages. There was but little the witnesses could testify to, there being no actual eye witnesses to the killing save appellant and the deceased,—the appellant exercising his right not to speak,—and the deceased being unable to speak. This leaves us unable to say that the jury acted with such unseemly haste as that their verdict evidenced an inflamed mind. We can see naught to cause argument upon their part or hesitation save as to the penalty to be assessed, the evidence of appellant's action at the scene of the killing may have evidenced such a heart regardless of social duty and fatally bent on killing of such a depraved nature that there was left to them but one course to pursue, and that was to give him no further chance to take a valuable human life. This matter evidences no error.

Bill of exceptions No. 12 relates to an argument by Judge Wilson, an assistant district attorney, in his opening speech

before the jury, as to the motive for this offense. The State's attorney mentioned the Hill County conviction for forty years, the Lubbock County conviction for life, and the Harris County conviction for twenty-five years, and questioned: "Did he not have a strong and powerful motive for not wanting to go back to the penitentiary when he killed Jess White?" We think this was a legitimate argument under the Beard and Stalcup cases, supra.

Bill of exceptions No. 13 complains of a purported statement made by Mr. Hancock, private prosecutor; while arguing that deceased was shot in the neck at close range, it was alleged therein that he said: "Why do I say so? Because there were powder burns on the right side of the neck of deceased; such evidence was uncontroverted." The trial court qualifies this bill by saying that no such a statement was made, and no objection or ex ception taken thereto. He also includes in such qualification the reporter's notes which set forth the entire speech of Mr. Hancock, and a perusal thereof evidences the fact that no such statement is found therein.

Appellant's bill No. 14 may be multifarious, but on account of the penalty we will consider the same. It first complains of the remarks of District Attorney Randle wherein it is stated he said:

"It has been stated that we are asking you gentlemen to do something that we would not do ourselves. I would like to make myself clear on that point. I would be only too glad to pull that lever without the slightest hesitation."

The qualification to the bill shows that previously one of appellant's attorneys had argued to the jury that the prosecution and the officers were trying to get the jury to do (and Randle was trying to do so) what they themselves would not do, that is, to inflict the death penalty. We think the district attorney's remarks were proper in answer to the statement of appellant's attorney. The bill further states that the same district attorney also made the statement before the jury that appellant by his own acts and deeds had forfeited his life to his country, and that it is cheap enough pay to society for all he has done. Again he said: "There should be no more crimes, no more escapes." However the trial court certifies that there was no exception of any kind taken to the argument of the district attorney until the filing of the amended motion for a new trial.

We think the argument above set forth was legitimate argument, had the same been presented to us in proper form. As to the severity of the penalty, we can find no reason in the record for the exercise of leniency upon the part of the jury. The testimony was properly before them of this man's misdeeds and the depths of depravity into which he had sunk as a recipient of the efforts of society to effect his reformation; of his reckless and ruthless disregard of society's rights and human life in avoiding a return to confinement that he had earned by his previous misconduct; of his malice toward all as he lay wounded at the scene of the death of this faithful officer, who was but carrying out the mandate of the State as he attempted to apprehend an escaped convict. In the light of these irrefutable circumstances, we feel inclined to say that this penalty is a deserved one.

Appellant's attorneys, appointed by the court, have manifested zeal and industry in presenting his defense, and we commend them in having discharged their duty.

We find no error presented in the record, and therefore the judgment will be affirmed.

### ON MOTION FOR REHEARING.

KRUEGER, Judge.

In his motion for rehearing appellant asserts that we erred in holding that the evidence of his former convictions and the punishment assessed against him in each instance was admissible. The identical question here presented was before this court in the case of Stalcup v. State, 130 Tex. Cr. R. 119, 92 S. W. (2d) 443, and decided adversely to his contention. In that case we discussed the question at length and stated the reason for the rule. The question was again brought before this court in the case of Beard v. State, 171 S. W. (2d) 869, under a somewhat different state of facts. In that case, Beard, on his trial, not only entered a plea of guilty to the charge of murder with malice, but in addition thereto, filed a motion in which he admitted that he caused a pistol to be smuggled into the jail for the purpose of escaping and, if necessary to attain that objective, to kill the officer. His object in doing so was to eliminate the issue of motive and intent and thus prevent the State from making proof of his former convictions and the punishment assessed against him in each case, but this court held that he could not, by his plea of guilty and his admission, prevent the State

from proving all the former convictions together with the punishment assessed against him in each instance, to show motive. While in the instant case, appellant entered a plea of not guilty, he waived nothing and admitted nothing but required the State to prove motive and malice as in the case of Stalcup v. State, supra. Consequently, under the holding in the two cases mentioned, no error was committed in admitting the evidence complained of. We, therefore, overrule the motion for a rehearing.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.