JAMES DAVIS V. STATE

No. 33,946.   December 13, 1961

No attorney for appellant of record on **appeal.**

*Frank Briscoe,* District Attorney, *Samuel H. Robertson, Jr., Thomas C. Dunn,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

McDONALD, Judge.

The offense is assault to murder; the punishment, ten years' confinement in the penitentiary.

Shirley Langston, a witness for the state, testified that prior to November 3, 1959, she had known the appellant for approximately two and a half years, during which time she had been his employee and had also dated him; that at about a week prior to the date in question she had seen the appellant in Judge Ragan's court as a result of the appellant having filed theft charges against her, which charges the judge dismissed; that as she was leaving the courthouse on that date the appellant told her he "was going to shoot me if it was the last thing he did."   She testified that on the night prior to November 3, 1959, she had been working at a lounge for a person by the name of Jewel Anderson; that the appellant came in the lounge and they had some conversation, and the appellant slapped her; that there was further conversation between them and the appellant asked to take her home but she refused, reminding him that he had told her he was going to shoot her, at which time the appellant

told her, "No, I will forget about that. You come on and I will take you home," and that she did leave with him at approximately 12:15 A.M.; that they went by the Silver Dollar Drive Inn owned by the appellant, and he went inside for a few minutes, came back to the car, and then they proceeded to another one of appellant's cafes known as the Silver Dollar No. 2 on Heiner and West Dallas. She testified that at this cafe the appellant had a room built onto and adjoining the cafe; that the appellant went through the cafe and entered the room through a door into the cafe, and then opened the outside door to the room, through which she entered; that after they both got into the room the appellant told her he was going into the cafe for a few minutes and would be right back whereupon she pulled off her clothes and went to bed; that after the appellant had not come back into the room after about thirty minutes, she, using an extension telephone in the room, talked to him in the cafe, and he told her he was going "to shoot a game of pool and will be right back there"; that about twenty minutes later after she had fallen asleep, the appellant came in, got into bed with her and had sexual intercourse with her; that she then asked him to take her home, but he stated he wanted to "take a little nap and then he would take me home." She further testified that she awakened him at 2:30 A.M. and told him she was ready to go home, "so he got up and put on his clothes"; and as they started out the door "he shot me the first time" in the thigh and that the appellant, holding her hand and running alongside her, continued to shoot her as she was running toward the street. She identified a .45 caliber automatic pistol as the pistol the appellant had shot her with four times prior to the time "the gun started snapping." She further testified that the appellant then hollered to Louise Boyd and said, "Louise, bring me another gun and some more bullets," and, in response thereto, Louise Boyd brought him a revolver and a handful of bullets, and the appellant started shooting her again. She testified that he then dragged her back from the street into the room, and, as he was attempting to call the police, he held the gun "down on my kneecap and shot me three times in the kneecap," and that as she was running out of the place he shot her twice more. She further testified that she escaped to another house and the police and an ambulance were called. She further established venue.

Mrs. Kathy Tyler, a witness for the state and medical records clerk of the Jefferson Davis Hospital, identified the hospital records of the witness Shirley Langston and testified that such records reflected that said patient was admitted to the hospital

on November 3, 1959, with eight .45 caliber pistol wounds of the left thigh and left knee.

James Tyler, a witness for the state and police officer with the city of Houston police department (no relation to the previous witness), testified that as a result of a call he proceeded to 703 West Dallas and saw blood all over the floor; that the appellant was in the room; that he saw two guns there, one a "Colt .38-40 thumb-buster" and a Colt .45. He testified that he followed a trail of blood from the room through an alley to a back porch, where he saw Shirley Langston lying on the floor propped up against the side of the house in a semi-conscious condition.

Jewel Anderson, a witness for the state and employer of the complaining witness, Shirley Langston, on the night before November 3, 1959, testified that Shirley left her lounge with the appellant "about closing time."

The appellant, testifying in his own behalf, testified that he arrived at his cafe between 12:00 and 1:00 o'clock A.M. and told the people in the cafe he was going back into his place and lie down; that just as he had dozed off to sleep, "my door cracked, and it was dark, and I jumped up and grabbed the gun from under my head. At that time, somebody came in and closed the door behind them, and I lay real still, and when they brushed against the bed I shot down on the floor, and then I heard somebody kind of running from one end of the room to the other, and I made three or four shots." He further testified that after things "quieted down," "I got up and eased to where I had a string hanging down from the light. I pulled the string down, and there stood Shirley against my dresser." He further testified that he thought she was a burglar and had for that reason fired the weapon into the floor. He denied that he intended to kill or seriously injure anyone. He further stated that after he discovered the person in the room was Shirley Langston, she was reaching toward a pistol on the dresser, at which time he shot toward her hand but did not hit her.

Louise Boyd testified that she had a nervous breakdown in December, 1959, subsequent to the shooting on November 3, 1959, and that she didn't remember the shooting, or taking a gun and some bullets to the appellant. She further testified that the appellant was her legal guardian.

Georgia Ann Kelly testified, but added no new material facts to the case.

The jury resolved the conflicts in the evidence against the appellant. We find the evidence is amply sufficient to support their verdict.

The record on appeal contains no formal bills of exception.

We have not been favored with a brief by appellant.

Appellant objected to the court's charge for the failure of the court to submit his right of "self-defense against a threatened assault with a deadly weapon on the part of Shirley Langston."

The issue of self-defense was never raised in any manner. By appellant's own testimony, he had already shot the complaining witness, thinking she was a burglar. Later, he shot at her because he thought she was reaching for the gun lying on the dresser. This last shot missed her, striking the dresser.

The case of Lackey v. State, 166 Tex. Cr. Rep. 387, 314 S.W. 2d 94, is controlling where Judge Dice, speaking for the Court, stated:

"There is no testimony that prior to the difficulty the deceased spoke any words, did any act, or made any demonstration of hostility toward the appellant, other than, as testified to by appellant, to walk toward him. There is no testimony that the deceased was armed at the time. To render a homicide justifiable in self-defense under Art. 1222, Vernon's Ann. P. C., the person attacked must actually believe that he is in danger of death or serious bodily injury at the hands of his assailant and must have reasonable grounds for so believing. 22 Tex. Jur. Para. 42, p. 442. It is not enough that the party believe himself in danger unless the facts and circumstances were such that the jury could say he had reasonable grounds for his belief. 4 Branch 2d Ed., p. 422, para. 2102; Surges v. State, 88 Tex. Cr. R. 288, 225 S.W. 1103. The facts presented would not have supported a finding by the jury that appellant had reasonable grounds for believing that he was in danger of death or serious bodily injury at the hands of the deceased. Therefore, the issue of

self-defense against a deadly attack was not raised. * * *"
No error is here shown.

Under appropriate instructions concerning appellant's defense that he thought Shirley Langston was a burglar, the jury found against him.

The informal bills of exception appearing in the statement of facts are completely without merit and reflect no error.

Finding no error, the judgment is affirmed.