**James Walter CHERRY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 44761.**

Court of Criminal Appeals of Texas.

June 28, 1972.

Rehearing Denied Dec. 13, 1972.

Second Rehearing Denied Jan. 24, 1973.

2. The same date the jury verdict was returned.

Melvyn Carson Bruder (Court-appointed), Donald D. Koons, Dallas (Court-appointed, on appeal), for appellant.

Henry Wade, Dist. Atty., John B. Tolle, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The appellant was convicted for murder; the jury assessed the punishment at death.

As a result of a phone call received from an officer of the Mesquite Police Department on the morning of January 10, 1969, Deputies Alvin Maddox, Jr. and Eddie Raymond Walthers of the Dallas County Sheriff's Department went to the Eastern Hills Motel at 3422 Samuels Boulevard in Dallas to make an investigation. When the officers arrived, appellant, who was with Twyna Blankenship, a woman companion, invited them to enter the room. He asked, "Is anything wrong?" and was told by the officers that they just wanted to talk to him. Appellant then handed Maddox a motor vehicle operator's license, issued in Georgia, by which he identified himself as Eldon Wildman of Atlanta, Georgia. Appellant, who was standing between the two beds in the motel room clad only in shorts, asked if he could put his trousers on. Appellant reached down and picked up his trousers which had been lying partially on the floor and partially on the nightstand between the two beds; as appellant was putting on his pants Officer Maddox observed a pistol on a shelf "four to six inches" from the floor which had been hidden by the trousers and which was obscured from Officer Walthers' view by appellant, who was standing between Walthers and the nightstand. As Maddox was saying, "Watch the gun, Buddy," appellant was turning and grabbing the pistol; he said, "You mean this one?" Walthers whirled and grabbed appellant's right hand in which he was holding the gun. Maddox also grabbed appellant's hand and the three of them fell on the bed nearest the door. As the struggle erupted, and in the midst of the woman's screaming "Kill 'em," the first shot was fired; it wounded Maddox in the left hand. Appellant then kicked Maddox in the stomach with both feet, propelling him over the other bed and against the wall. Simulta-neously with his being kicked, and being propelled across the bed, Maddox drew his revolver and fired at appellant, striking him in the chest. At the same time appellant fired at Maddox but missed.

Maddox landed almost upside down after having been kicked by appellant; the next shot he fired struck his own foot and rendered him unable to walk. Maddox crawled around the foot of the bed across which he had been kicked and went around Officer Walthers who was on his knees reaching up towards appellant, and around appellant; as both officers reached for the gun, appellant "pulled it back . . . and Officer Walthers reached up for the gun again and he missed and Cherry fired right into his heart . . . " As Walthers fell off the bed, appellant turned the weapon at Maddox, pointed the gun in his face, and "clicked it several times," misfiring each time.

After having fallen away from appellant when he pointed the pistol at him, Maddox grabbed appellant in a "bear hug manner." Appellant told the woman, who had been screaming all the time, to "get this son-of-a-bitch off of me." The woman hit Maddox over the head "with a bottle of some kind," causing him to temporarily lose his grip. Appellant then hit Maddox over the head with the gun. Maddox grabbed appellant again and the woman hit Maddox over the head with a telephone. Appellant shook loose from Officer Maddox and he and the woman ran out the door, across the patio, got into a blue Chevrolet and left the motel.

Officer Eddie Raymond Walthers "died of a bullet wound to the left chest with penetration of the heart and bleeding from that wound."

The appellant's ground of error number fourteen urging that the evidence is insuf-ficient to show appellant's guilt of the offense of murder with malice is without merit and is overruled.

The appellant's first two grounds of error complain of the change of venue to

Tarrant County from Dallas County and the failure to grant a change of venue from Tarrant County to Denton County.

The offense occurred in Dallas County and the indictment was docketed in Criminal District Court No. 4 of Dallas County. The appellant requested a change of venue. His request was granted and the case was transferred to the 27th District Court in Bell County.

■ In Bell County, the appellant objected to trial in that county on the grounds that Bell County was not within the same district nor in a district adjoining Criminal District Court No. 4 of Dallas County. Appellant further alleged that there were counties within adjoining districts to Criminal District Court No. 4 of Dallas County which were not subject to the same conditions that required the transfer of the case from Dallas County. Request was made that the case be returned to Dallas County under the provisions of Article 31.03, Vernon's Ann.C.C. P.[1] The case was transferred back to Criminal District Court No. 4 of Dallas County.[2]

Honorable John Mead, Judge of Criminal District Court No. 4 of Dallas County,

transferred the case to a county in an adjoining district, Criminal District Court No. 1 of Tarrant County.

The appellant objected to the change of venue and transfer of the case from Dallas County to Tarrant County, in both the Criminal District Court No. 4 of Dallas County and Criminal District Court No. 1 of Tarrant County, urging that the case should be transferred to a district court in Denton County, that being an adjoining district to the Criminal District Court No. 4 of Dallas County which was not subject to the same condition which required the transfer from Dallas County. The appellant offered to make proof that he could obtain a fair trial in Denton County, Texas.

■ The appellant did not file a motion for change of venue from Criminal District Court No. 1 of Tarrant County in that court. The objections to being tried in Tarrant County Criminal District Court No. 1 cannot be construed to be a motion for change of venue from Tarrant County. It was the appellant's position that he was entitled to one of three alternatives: (1) that the case be transferred to a "district court of Denton County, Texas, because

---

1. Article 31.03, V.A.C.C.P. provides:
"A change of venue may be granted in any felony or misdemeanor case punishable by confinement on the written motion of the defendant, supported by his own affidavit and the affidavit of at least two credible persons, residents of the county where the prosecution is instituted, for either of the following causes, the truth and sufficiency of which the court shall determine:
"1. That there exists in the county where the prosecution is commenced so great a prejudice against him that he cannot obtain a fair and impartial trial; and
"2. That there is a dangerous combination against him instigated by influential persons, by reason of which he cannot expect a fair trial.
"An order changing venue to a county beyond an adjoining district shall be grounds for reversal, if upon timely contest by defendant, the record of the contest affirmatively shows that any

county in his own and the adjoining district is not subject to the same conditions which required the transfer."

2. The appellant's objection to the transfer of the case to Bell County on the grounds that "a county in his own or the adjoining district is not subject to the same conditions which required the transfer" was not timely; that objection to the order changing venue to Bell County should have been made in Dallas County. Ellzey v. State, 158 Tex.Cr.R. 604, 259 S.W.2d 211 (Tex.Cr.App.1953) and Hill v. State, 123 Tex.Cr.R. 552, 59 S.W.2d 411 (Tex. Cr.App.1933). We recognize that there was some change in Article 31.03, V.A.C. C.P., 1965, from the predecessor statutes but the cases cited would be authority for requiring the objection to be made in the transferring court. Of course, it was not error to transfer this case back to Dallas County as it was done upon the appellant's request.

under the pleadings and as a matter of law he was entitled to have his case tried in Denton County, Texas;" (2) that the court transfer the case "back to Dallas County, Texas, for the purpose of having a hearing and taking evidence on whether the same conditions that required the original transfer of venue from Dallas County, Texas, existed in Denton County, Texas, under the provisions of Article 31.03, V.A. C.C.P.;" or (3) that Criminal District Court No. 1 of Tarrant County "hold a hearing and take evidence on the question of whether the same conditions which required the original transfer of venue from Dallas County, Texas, exist[ed] in Denton County, Texas; . . ."

To follow the appellant's argument and interpretation of Article 31.03, V.A.C.C.P., would give the appellant a right to select the county to which a case could be transferred on a change of venue.

■ We do not construe Article 31.03, V.A.C.C.P., as does the appellant. Criminal District Court No. 1 of Tarrant County is in an adjoining district to that of Criminal District Court No. 4 of Dallas County. The case was not transferred "beyond an adjoining district" and the provision providing that "if upon timely contest by appellant the record of the contest affirmatively shows that any county in his own and the adjoining district is not subject to the same conditions which required the transfer" will be grounds for reversal is not applicable to the facts of this case. Appellant's grounds of error number one and number two are overruled.

In his third ground of error, the appellant urges that the "court erred in excusing twenty-two veniremen upon the State's challenge for cause pursuant to Article 35.-16, Section b(1), Code of Criminal Procedure, in violation of Amendment VI and XIV, United States Constitution."

In argument in support of this ground of error the appellant advances a rather nar-

row interpretation of the Supreme Court opinions in Witherspoon v. Illinois, 391 U. S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) and Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969). It is his contention that the State may only inquire of a prospective juror whether he will *consider* the death penalty—*"all that is required of a prospective juror is that he be willing to consider the death penalty as punishment for a crime!"* The "crucial question" he says is "Can you consider the death penalty as punishment for a crime?" He argues that the twenty-two prospective jurors who were excused were not "queried as to whether or not they could consider the death penalty" but on the other hand, all the prospective jurors who were excused were interrogated "in terms of whether they could vote for, inflict or give the death penalty."

■ The appellant's interpretation of the authorities upon which he relies is too restrictive. Under *Witherspoon,* the State is entitled to determine not only that the prospective juror will consider the death penalty, but also whether there are circumstances conceivable under which he could assess such a penalty.

" . . . The most that can be demanded of a venireman in this regard is that he be willing to *consider* * all of the penalties provided by state law, *and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings.*** If the voir dire testimony in a given case indicates that veniremen were excluded on any broader basis than this, the death sentence cannot be carried out . . ." 391 U.S. 522 n. 21, 88 S.Ct. 1777.

■ We are led to conclude that the questions propounded were proper under the standards of voir dire examination dic-

---

* Emphasis in original.

** Emphasis supplied.

tated by Witherspoon v. Illinois, *supra*; appellant's argument is without merit and is overruled.

■ The appellant's ground of error number four complains that prospective jurors Musick and Sanders were erroneously excused for cause. They were excused because they said they could not consider assessing the minimum sentence of two years imprisonment in the event the appellant was found guilty of murder with malice. Even though the State was seeking the death penalty, the jurors were properly excused on the State's motion for cause under the provisions of Article 35.16, V.A.C.C.P.[2] Huffman v. State, 450 S.W.2d 858 (Tex.Cr.App.1970).

■ In appellant's ground of error number five he alleges "The trial court erred in permitting a State's witness to testify to extraneous offenses not admissible at the appellant's trial."

For the purpose of showing motive, Warden Doyle Smith of the Georgia State Board of Corrections was permitted to testify that on May 20, 1968, appellant escaped from a prison in that state where he had been serving a sentence of life imprisonment and that he was at large at the time of the instant offense.

In Stephens v. State, 147 Tex.Cr.R. 510, 182 S.W.2d 707 (Tex.Cr.App.1944), the defendant had been convicted for the murder of Jess White, an officer of the Dallas County Sheriff's Department, after having escaped from a state penitentiary in Texas. There, this court said:

"Appellant insists that it was error to admit in evidence proof of his former convictions, bearing confinement of a lifetime in the penitentiary, 40 years and 25 years therein. Evidently this testimony was admitted under the former decisions of this court which will be found collated and discussed in the late cases of Stalcup v. State, 130 Tex.Cr.R. 119, 92 S.W.2d 443, and Beard v. State, Tex.Cr.App. [146 Tex.Cr.R. 96], 171 S.W.2d 869. In line with the reasoning set forth in these cases and those therein discussed we think the evidence of the pending punishments as shown by these previous convictions could be utilized by the State in order to show a motive for this killing. . . .

\* \* \* \* \* \*

" . . . We think it permissible to show such, not only to evidence motive in this homicide, but also to justify the deceased in attempting to retake appellant without having in his possession a warrant." 182 S.W.2d at 709–710.

In Stalcup v. State, 130 Tex.Cr.R. 119, 92 S.W.2d 443 (Tex.Cr.App.1936), this court wrote:

"It occurs to us that the former convictions might have a distinct bearing upon his desire to escape and the degree of reckless desperation with which it might be attempted. . . . One charged with burglary would not reasonably be expected to resort to the same extreme means to enable him to escape as one who had already been convicted and sentenced to life imprisonment. . . . [T]he former convictions were admissible as tending to show the inducing cause which moved him to resort to such reckless and desperate means of regaining his liberty as was done in the instant case; and, therefore, the former convictions would be admissible on the issue of motive and intent." 92 S.W.2d at 444.

The trial court's ruling was correct and the evidence was admissible for the purpose for which it was allowed. See also

---

2. Article 35.16, V.A.C.C.P., in part provides:

"(b) A challenge for cause may be made by the State for any of the following reasons:

" . . .

"(3) That he has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment."

Summers v. State, 464 S.W.2d 126 (Tex. Cr.App.1971) and Hicks v. State, 389 S. W.2d 950 (Tex.Cr.App.1965).

Appellant's fifth ground of error is overruled.

■ Appellant's sixth ground of error urges "The trial court erred in permitting the State to impeach one of its own witnesses over appellant's objection, and then after the impeaching testimony had been heard by the jury, sustaining the objection and refusing to grant appellant's motion for mistrial."

Witness Martha Jean Rhodes was called by the State to relate certain facts concerning appellant's having gone to her residence after having left the motel. Mrs. Rhodes testified that the appellant and Twyna Blankenship, the woman who was with him, came to her home at approximately noon on January 10, 1969. She testified that she tried to clean the blood off the appellant and stop the bleeding from the wounds to his chest and leg. Witness Rhodes stated that she provided a dress for Twyna Blankenship, who had been wearing only a gown, reloaded appellant's gun at his request, then helped appellant into his car. Appellant and Twyna Blankenship then left.

After having elicited testimony of the above facts, the State asked the following question:

"MR. ERWIN (Prosecuting Attorney): Q. Now, Mrs. Rhodes, would you tell the jury about your criminal record?

"A. I was on probation for forgery and passing."

Defense counsel objected on the grounds that counsel was attempting to impeach his own witness. The trial court overruled the objection, but then decided to sustain it; the jury was instructed to disregard the testimony regarding the witness's criminal record. Appellant's motion for mistrial was overruled.

If error is shown, it is not such that it would require reversal; the trial court granted appellant sufficient relief. In his brief, appellant fails to indicate how his rights were prejudiced and we perceive no harm. This ground of error is overruled.

■ In his seventh and eighth grounds of error, appellant complains that the trial court erred in admitting into evidence those photographs of the room in which the shooting occurred which displayed blood on the premises.

In Martin v. State, 475 S.W.2d 265 (Tex. Cr.App. 1972) this court said:

"Black and white photographs of the scene of a crime are admissible as an aid to the jury in interpreting an understanding of the testimony adduced at the trial. Smith v. State, Tex.Cr.App., 460 S.W.2d 143; David v. State, Tex.Cr. App., 453 S.W.2d 172; Turner v. State, Tex.Cr.App., 462 S.W.2d 9; Rivera v. State, Tex.Cr.App., 437 S.W.2d 855. The fact that blood spots are depicted does not automatically rule out their admissibility. . . .

"We hold that if a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury." 475 S.W.2d at 267.

As was true in *Martin,* "We find nothing in the . . . photographs which represent the scene of the homicide in the instant case which would inflame a reasonable person sitting as a juror and no abuse of discretion by their admission." *Id.* This ground of error is overruled.

■ The appellant's ground of error number nine is that "Appellant was denied the effective assistance of counsel by the trial court's refusal to authorize the disbursement of funds necessary to secure needed expert witness and to properly investigate the appellant's case." This com-

plaint relates to the appellant's motion to secure the opinion and testimony of a ballistics expert.

The appellant acknowledges that the maximum sum for investigatory fees permitted by law under the provisions of Article 26.05 § 1(d), V.A.C.C.P.,[3] was provided and expended in his behalf. The appellant then asserts that "The record in this case adequately shows the need for funds in excess of $250.00 provided for by law for expert witness and investigation costs (As recognized by the trial court), and that the denial of the right to such money constitutes a deprivation of the right to an effective presentation of all defensive issues available to the accused." The appellant's brief makes the above conclusion and does not refer to any portions of this voluminous record showing how the appellant was harmed and we have been unable to find any part of the record showing harm to the appellant.[4]

The last discussed ground of error, as well as the twenty-first ground of error, which raises the same contention, are overruled. *Cf.* Eggleston v. State, 422 S.W.2d 460 (Tex.Cr.App.1967).

The appellant's grounds of error ten and eleven are "The trial court erred in overruling the appellant's special requested charges" and "The trial court erred in failing to respond to the appellant's objection to the court's charge on the issue of appellant's guilt or innocence."

 These grounds of error are not specific and they are not in compliance with the provisions of Article 40.09 § 9, V.A.C.C.P. The arguments under each ground of error are multifarious. However, in view of the extreme penalty, they will be considered and discussed. The appellant's requested charge for an instruc-

tion on specific intent to kill and aggravated assault are without merit. Where the same contention was made in Gamblin v. State, 476 S.W.2d 18 (Tex.Cr.App.1972), it was said:

"Whenever the means used are such as would ordinarily result in the commission of an offense, the intention to commit that offense is presumed. Article 45, Vernon's Ann.P.C. The intent to commit murder may be shown by the use of a deadly weapon per se. Stallings v. State, Tex.Cr.App., 476 S.W.2d 679 (1–11–72); Hall v. State, Tex.Cr.App., 418 S.W.2d 810. A pistol is a deadly weapon per se, and the shooting of deceased at close range with such a weapon authorized a finding of malice. Taylor v. State, Tex.Cr.App., 470 S.W.2d 693; Ratcliffe v. State, Tex.Cr.App., 464 S.W.2d 664. Since the intent to kill is presumed, a charge on aggravated assault is not required. Suber v. State, Tex.Cr.App., 440 S.W.2d 293; Davis v. State, Tex.Cr.App., 440 S.W.2d 291."

 The appellant did not testify and we find no evidence in the record which would require a charge on self-defense. Gonzales v. State, 426 S.W.2d 859 (Tex.Cr.App.1968); Davis v. State, 171 Tex.Cr.R. 517, 352 S.W.2d 134 (Tex.Cr.App.1961); Field v. State, 155 Tex.Cr.R. 137, 232 S.W.2d 717 (Tex.Cr.App.1950). Objections to the charge such as the "failure to apply the law to the facts taking into consideration all mitigating facts adduced in the trial" are of no merit. These grounds of error are overruled.

 In his twelfth ground of error appellant contends "The trial court erred in failing to grant appellant's motion for mistrial after the prosecutor injected facts into the case during oral argument."

---

3. Article 26.05 § 1(d), V.A.C.C.P. has since been amended to provide: "For expenses incurred for purposes of investigation and expert testimony, a reasonable fee to be set by the court but in no event to exceed $500;"

4. Appellant's only references are to those parts of the record where the requests for additional funds are reflected.

The remarks complained of are as follow:

"MR. SPARLING (Prosecuting Attorney): . . . As far as tests run on the clothes as to powder burns, I will say this—and they criticized us for not running a test on it, but they didn't tell you that the clothes were submitted for blood type analysis. The State never knew . . .

"MR. HAUSENFLUCK (Defense Counsel): We object to Counsel testifying, not under oath, outside the record. He said he didn't tell them that. It is not in the records then its testimony on his part and we ask the Court to instruct the jury not to consider it.

"THE COURT: The jury will remember what the testimony was.

"MR. HAUSENFLUCK: We will ask the Court for a mistrial because of the unsworn testimony of this Counsel.

"THE COURT: Overruled.

"MR. SPARLING: They told you that we did not run a test as to the powder burns. The argument made by the defendant was that we did not submit the clothes for tests for powder burns. They didn't tell you whether or not we even knew that was going to be the defense's theory in the case."

The record reflects that prior to the above remarks having been made, defense counsel's closing argument was, in part, as follows:

"MR. MUSSLEWHITE: Why do I say we know [James Cherry did not 'wrestle away the gun and (stick) it right at Buddy's heart and (shoot) him seven or eight inches away']? Because of some things that I don't think even the State's attorneys picked up during this trial.

"One are (sic) the powder tests. . . .

\* \* \* \* \* \*

"The State didn't even go to the trouble to make a test."

We conclude that the prosecutor's remarks were invited by defense counsel's argument, and were, as stated, a response to the criticism that "The State didn't even go to the trouble to make a test." No error is shown. Appellant's twelfth ground of error is overruled. Cf. Cuellar v. State, 169 Tex.Cr.R. 604, 336 S.W.2d 159 (Tex. Cr.App.1960); see, generally, 12 Tex. Digest, Criminal Law, .

 In his next ground of error appellant alleges "The trial court erred in overruling the appellant's objection to the prosecutor's improper argument." The record reflects the following colloquy:

"MR. ERWIN (Prosecuting Attorney): I think you, as responsible citizens of this county and this State, can realize that any time anyone, be it deputy sheriff, mayor, street sweeper or college student is assassinated like Eddie Raymond Walthers was in this case, it must become important to law enforcement officials and responsible citizens of the State of Texas, because each time our law, our murder law, is violated our State becomes that much weaker.

"Every time any law is violated it becomes that much weaker. We get that much closer to anarchy.

"MR. KOONS (Defense Counsel): We object to this line of argument.

"THE COURT: Stay in the record."

Appellant requested no further relief. See 5 Tex.Jur.2d Appeal and Error, Criminal Cases § 45. The error, if any, was not such that it could not have been cured by a proper limiting instruction. We are not inclined to reverse a case where an instruction to disregard the improper argument could cure any error and the record reflects no request therefor. Schreiner v. State, 478 S.W.2d 460 (Tex.Cr.App.1972);

Blassingame v. State, 477 S.W.2d 600 (Tex.Cr.App.1972). This ground of error is overruled.

In his fifteenth ground of error the appellant alleges that the trial court committed reversible error in admitting into evidence certain prior convictions of the appellant which were offered under the provisions of Article 37.07, V.A.C.C.P. at the punishment stage because the appellant was not represented by counsel at the time he was sentenced on each conviction.

Three series of convictions were offered; two series consisted of convictions from Dallas County in 1952, and in 1961; the third "series" was a single conviction in Nolan County. The Nolan County conviction was excluded by the trial court and was not in evidence before the jury.

Appellant argues that his testimony that he was not represented by counsel and the absence of a recitation in the sentence that counsel was present necessitates reversal.

The proof of prior convictions in Dallas County consisted of certified one-page copies of the judgment and sentence in each case. At the top of each form the judgment recites " . . . the defendant, James Walter Cherry appeared in person, his counsel also being present . . ." and after being admonished by the court of the consequences of his plea, entered his plea of guilty before the court.

Below the judgment on each page is a copy of the sentence which in each instance was pronounced the same day as the judgment.

The absence of a recitation on the face of the sentence that appellant was represented by counsel is not determinative; where, as here, the judgment includes such a recitation and reflects the same date as the sentence, the presumption obtains that appellant had counsel at the time of sentencing. Gutierrez v. State, 456 S.W.2d 84 (Tex.Cr.App.1970); Tinsley v. State, 461 S.W.2d 605 (Tex.Cr.App.1970).

Further, appellant did not show he was indigent at the time of the prior convictions or that he did not waive counsel. Martinez v. State, 469 S.W.2d 185 (Tex.Cr.App. 1971); Green v. State, 474 S.W.2d 212, 214 (Tex.Cr.App.1971); Martin v. State, 463 S.W.2d 449 (Tex.Cr.App.1971); Hathorne v. State, 459 S.W.2d 826 (Tex.Cr.App.1970). This ground of error is overruled.

In appellant's ground of error number sixteen he urges that appellant's death sentence constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution. In Tezeno v. State, 484 S.W.2d 374 (1972), this court recently ruled adversely to the contention raised here by appellant. This ground of error is overruled.

In his seventeenth ground of error appellant urges "The trial court erred in refusing to grant a mistrial during argument on the issue of punishment when the prosecutor made a prejudicial statement and injected new facts into the case."

Complaint is made of that portion of the argument by the assistant district attorney wherein he said, "You can consider the character of the deceased. I will tell you about Buddy Walthers. He was embalmed with the tears of the people who knew him. He was a fine man. He didn't have a right to die. . . ." Appellant's objection was sustained and the jury was instructed to disregard the statement of the prosecutor.

We conclude from the entire context that the relief granted was sufficient and the denial of the motion for a mistrial was proper. Compare Mays v. State, 50 Tex. Cr.R. 165, 96 S.W. 329 (Tex.Cr.App.1906).

In appellant's eighteenth ground of error complaint is made of the argument of the prosecutor wherein he said, "To return a verdict of anything less than a sentence of death in this case would be

to say to Eddie Raymond Walthers' family, God bless them—." Counsel for appellant then said, "We're going to object to any further reference to Mr. Walthers' family." The trial court directed the prosecutor to "stay in the record, please."

■ It was incumbent upon defense counsel to clearly object to the remark made and to secure a definite ruling thereon. Piraino v. State, 415 S.W.2d 416 (Tex.Cr.App.1967). Further, the record reflects no request that the jury be instructed not to consider the remarks. Schreiner v. State, *supra*; Blassingame v. State, *supra*. This ground of error is overruled.

■ It is next urged in ground of error number nineteen that "The trial court erred in admitting in evidence the fingerprints taken of the appellant (made) while he was in custody." This ground of error is overruled on the authority of Burton v. State, 471 S.W.2d 817 (Tex.Cr.App.1971). See Villareal v. State, 468 S.W.2d 837 (Tex.Cr.App.1971) and cases therein cited.

■ The appellant urges in ground of error number twenty that "The trial court erred in overruling appellant's motion to suppress the fruits of the search of the motel room in which the events in question occurred in violation of the appellant's rights under the laws and Constitution of the State of Texas and the United States."

This ground of error and the argument in its support, found in the appellant's brief, are not specific enough to comply with Article 40.09, Section 9, V.A.C.C.P. Fruits of the alleged unlawful search which may have been admitted into evidence are not designated. Even so, we will discuss this ground of error as we understand it.

After a pretrial hearing on the motion to suppress the trial court entered an order finding the entry into the motel room was invited and was not unlawful. We agree with this finding. The trial court specifi-

cally declined to make a further ruling at that time concerning a search or the admissibility of evidence. The appellant does not designate any part of the record other than the motion to suppress where objections on these grounds were made and a ruling of the trial court secured.

■ The appellant was not arrested or recaptured in the motel room which he abandoned. After the abandonment of the room, the appellant had no right to complain about a search. Compare Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960).

■ The appellant's complaint in ground of error number twenty-two regarding the admission of testimony as to the length of time that Deputy Maddox spent in the hospital recovering from wounds inflicted at the scene at time of the shooting in question is without merit.

In appellant's twenty-third ground of error he contends that the trial court permitted "a witness to testify as to the trajectory of bullets fired in the room during the shooting in question, said witness not being a qualified witness to give expert testimony."

Officer Kitchings, Dallas Police Department, testified that he and another officer investigated the motel room for bullet holes. Thereafter, the holes they had found were probed with a pencil to determine the angles at which the bullets penetrated the walls. Strings were then extended on a line through the center of the pencil outward from the wall until they intersected with another object in the room such as one of the beds or another wall. A composite picture showing the room with the strings extending from the bullet holes was admitted into evidence.

■ The court sustained appellant's objections to Kitchings' testifying as to his opinion concerning trajectories of bullets. The trial court did, however, allow Kitchings to testify as to the procedure he had

followed and to thereby explain the strings running from the bullet holes. Kitchings was properly allowed to express the methods he had utilized and the matters about which he was permitted to testify did not constitute expert opinion testimony. The photograph made in the manner described by the witness furnished a visual aid which the jury might legitimately use to help them in evaluating other evidence. We perceive no error. See 11A Tex.Digest, Criminal Law, 

Ground of error number twenty-four alleges "The appellant was denied a fair trial because the State did not comply with the trial court's order and make the witness Thacker available to appellant's counsel prior to calling him as a witness."

The record reflects that Carl Thacker was called to the stand on June 25, 1970. Thacker was available on the preceding day and the defense was given an opportunity to interview the witness at that time, as well as on the morning of the 25th, and prior to the commencement of proceedings. When court convened on the 25th it was determined that defense counsel had not availed themselves of either opportunity. The trial court then called a recess to provide a third occasion for the witness to be questioned and made it clear that "it would cooperate in the obtaining of any additional witnesses they wished to subpoena by reason of some controversial piece of testimony or evidence they wish to offer concerning the testimony of [Thacker]."

Appellant was given ample opportunity to interview the witness prior to the time he testified. This contention is overruled.

Ground of error number twenty-five complains of the order of argument of counsel. The order of argument of counsel is within the discretion of and may be regulated by the trial court, except that State's counsel shall have the right to make the concluding address to the jury. Article 36.07, V.A.C.C.P. No abuse of discretion is shown.

In appellant's ground of error number twenty-six he urges reversal is required by the argument of the State's counsel. The argument of which complaint is made does not appear in the brief and appellant makes no reference to the page in the record at which it can be found. This ground of error is overruled. Article 40.09, Section 9, V.A.C.C.P.

Appellant's ground of error number twenty-seven that the trial court erred in overruling the appellant's motion for a new trial because the evidence adduced at the hearing upon such motion indicated the existence of prejudice is not supported by the record and is overruled.

In appellant's final ground of error he alleges that he was deprived of evidence favorable to his defense in that no inquest was conducted as required by Article 49.01, V.A.C.C.P.

Appellant does not reveal the nature of the evidence to which he refers. Further, there is nothing in the record to support appellant's assertion, raised for the first time on appeal, that no inquest was held. This ground of error is overruled.

During oral argument appellant's counsel directed the court's attention to the record which reflects that the order immediately following the appellant's motion to quash the indictment shows the motion to have been granted. The order reads "This Motion was heard on this 17 day of April, 1970, and is hereby (Granted) (~~Overruled~~), to which action of the court the defendant then and there in open court excepted." It appears that the trial court inadvertently struck the word "overruled" rather than the word "granted." Undoubtedly, it was a clerical error. It is inconceivable that the trial court and the parties would have continued with the trial of the case for a number of days, which resulted in a record consisting of approximately 3,500 pages, had the motion to quash the indictment in fact been granted. Also, it is inconceivable that

the appellant would have "excepted" to a ruling granting the motion to quash the indictment.

The judgment is affirmed.

Opinion approved by the Court.

## OPINION
## ON APPELLANT'S MOTION FOR REHEARING

DAVIS, Commissioner.

In light of the recent decisions of the United States Supreme Court regarding the death penalty, appellant urges that his conviction be reversed and the cause remanded to the trial court.

The Supreme Court of the United States overruled the prior holding of this and other courts in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, and in Branch v. Texas, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, when it held in effect that the death penalty may not be assessed under our present statute.

The Honorable Preston Smith, Governor of Texas, acting upon the recommendation of the Board of Pardons and Paroles by Proclamation dated September 13, 1972, has commuted the punishment in this cause from death to life imprisonment.

Whan v. State, Tex.Cr.App., 485 S.W.2d 275 (No. 41,789, 1972), is contrary to appellant's contention that this Court cannot reform the judgment under such commutation so that punishment is assessed at life imprisonment. See Antwine v. State, 486 S.W.2d 578 (1972); Hall v. State, 488 S. W.2d 94 (1972).

In appellant's pro se brief filed on motion for rehearing, he urges that he had not received notice nor had he signed any waiver or consent which would permit any official to take any procedure toward an "unrequested and unwanted commutation."

▇ Notification to appellant or his attorney is not necessary to effectuate either the Governor's or the Board of Pardons and Paroles' powers regarding commutation of sentence. (Stanley v. State; Thames v. State; Curry v. State; David v. State; Wright v. State; Smith v. State; Tea v. State; Branch v. State; Matthews v. State; Morales v. State; Huffman v. State), 490 S.W.2d 828.

▇ Appellant further urges in his pro se brief that since sentence had not been pronounced in his case, the Governor had nothing to commute. This contention was decided adversely to appellant in Whan v. State, supra; Antwine v. State, supra, and Hall v. State, supra.

We have considered other contentions raised by appellant in his pro se brief and find them to be without merit.

As a result of the Governor's commutation and authority of Whan v. State, supra, the judgment of the trial court is ordered reformed to show the punishment to be assessed at life.

The judgment as reformed is affirmed and appellant's motion for rehearing is overruled.

Opinion approved by the Court.

ONION, P. J., dissents. See Whan v. State, supra (dissenting opinion) and Stanley v. State, et al., supra (dissenting opinion).