

**In the
Court of Appeals
Second Appellate District of Texas
at Fort Worth**

———————————————

No. 02-23-00309-CR

———————————————

EDWARD JAMES MURRAY, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court No. 1658768

---

Before Wallach, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

A jury found Appellant Edward James Murray guilty of murder and assessed his punishment at imprisonment for life and a fine of $10,000. *See* Tex. Penal Code Ann. § 19.02(c). The trial court sentenced Murray in accordance with the jury's verdict.

On appeal, in one point, Murray argues that because the detective who testified was not a qualified expert, the trial court abused its discretion by admitting his opinion testimony about bullet ballistics, bullet trajectories, and the relative positions of the persons involved in the shooting. We hold that the trial court did not abuse its discretion by admitting the disputed testimony, overrule Murray's point, and affirm the trial court's judgment. *See* Tex. R. Evid. 701.

## I. Background

Murray does not dispute the evidence's sufficiency, so our summary will be brief. Murray and the deceased, Antonio Robinson, lived in the same duplex. Robinson and his common-law wife, Ashley Lacy, had three children, who, at the time of Robinson's death, were nine, three, and two years old. Murray had a running dispute with the Robinsons about toys left in the common area by their children.

On September 27, 2020, Lacy heard Murray "being belligerent" and making insulting comments. A little while later, after Robinson had returned home from an errand, Lacy and Robinson heard a clank at their door. When the two stepped outside to investigate, Murray shot Robinson three times. Murray pointed the gun at Lacy as

2

well and pulled the trigger twice, but the gun did not discharge. When Murray's roommate saw what Murray had done, he told Murray to give him the gun and to get in their vehicle. The two then left the scene. Robinson later died in a hospital.

## II. Detective's Opinion Admissible as Lay-Witness Testimony

In Murray's sole point, he argues that the "trial court erred in admitting opinion testimony by Detective [Kent] Bickley about bullet ballistics and trajectories and the positions of the persons involved because Bickley was not a qualified expert." We hold that the trial court did not abuse its discretion by admitting the testimony because it was admissible as opinion testimony of a lay witness. *See* Tex. R. Evid. 701.

### A. Standard of Review

We use an abuse-of-discretion standard when reviewing a trial court's evidentiary rulings. *See Jenkins v. State*, 493 S.W.3d 583, 607 (Tex. Crim. App. 2016); *McCann v. State*, No. 02-19-00397-CR, 2020 WL 6326148, at *5 (Tex. App.—Fort Worth Oct. 29, 2020, no pet.) (mem. op., not designated for publication). A trial court abuses its discretion when its ruling falls outside the zone of reasonable disagreement. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). If an evidentiary ruling is correct under any theory of law applicable to the case, we uphold the ruling. *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006).

Whether an opinion falls within Rule 701's requirements is entrusted to the trial court's sound discretion. Tex. R. Evid. 701; *Fairow v. State*, 943 S.W.2d 895, 901 (Tex. Crim. App. 1997).

## B.  Legal Principles

A person may offer an opinion as a lay witness if the opinion is based on that person's perception and if the opinion helps the factfinder understand the witness's testimony or helps the factfinder determine a factual issue. Tex. R. Evid. 701. A lay witness's personal experience and knowledge may establish that the witness is capable, without qualification as an expert, of expressing an opinion on a subject outside the realm of common knowledge. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); *see also Fairow*, 943 S.W.2d at 899; *Larrinaga v. State*, No. 02-14-00199-CR, 2015 WL 4730710, at *4 (Tex. App.—Fort Worth Aug. 6, 2015, pet. ref'd) (mem. op., not designated for publication).

More specifically, a police officer's personal knowledge may come from his experience. *See Roberson v. State*, 100 S.W.3d 36, 39 (Tex. App.—Waco 2002, pet. ref'd). For example, in *Roberson*, an officer who had performed some follow-up investigations in sexual-assault cases testified that sexual-abuse victims commonly reveal more details as they become comfortable with law enforcement. *Id.* at 39–40. In another case, an officer who had witnessed hundreds of narcotics transactions testified that he had interpreted the defendant's conduct to be consistent with a drug deal. *See Williams v. State*, 826 S.W.2d 783, 785 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). Finally, an officer who had investigated massage parlors and modeling studios was allowed to testify that a "Swedish Deep Muscle Rub" was slang

4

for prostitution. *See Austin v. State*, 794 S.W.2d 408, 409–10 (Tex. App.—Austin 1990, pet. ref'd).

## C. Discussion

The State did not rely on Detective Bickley for the trajectory of the bullets through Robinson's body. Rather, the State relied on a medical examiner.

### 1. Medical Examiner

A medical examiner stated that Robinson had three entrance wounds and two exit wounds:

- one bullet entered the left side of Robinson's chest and exited through his back;

- one bullet entered near Robinson's belly button and traveled upward to his heart and lodged elsewhere in his body; and

- one bullet entered the inner part of Robinson's right thigh, went upward, and exited through his right hip area.

A medical examiner is clearly qualified to testify about entry wounds and the trajectory of bullets as they passed through a victim's body. *Kopycinski v. State*, No. 13-20-00548-CR, 2022 WL 1669393, at *4 (Tex. App.—Corpus Christi–Edinburg May 26, 2022, pet. ref'd) (mem. op., not designated for publication). The medical examiner provided a diagram showing the entrance wounds of all three bullets and the exit wounds of two of the three bullets.

## 2. Detective Bickley

In his brief, Murray complains about Detective Bickley's assertion that the second and third bullets indicated that Robinson was supine[1] when he was shot. Murray contends that Detective Bickley was not qualified as an expert to make those determinations.

The State concedes that Detective Bickley was not testifying as an expert. Yet Detective Bickley did not need to be an expert to express an opinion regarding the relative position of Robinson's body when he was shot.[2] *See* Tex. R. Evid. 701.

For the path of the bullets through Robinson's body, Detective Bickley relied on the medical examiner's diagram. When taken on voir dire, Detective Bickley testified that he had experience recognizing entrance and exit wounds and acknowledged that he had no medical training and had not conducted any autopsies and that a pathologist was the appropriate person to determine the path of a bullet through the body. Detective Bickley, though, did not make those determinations; he relied on the medical examiner's findings based on the medical examiner's diagram.

---

[1]Detective Bickley used the word "prone," but contextually he described "supine." If Robinson were prone, bullets two and three would have entered his back and the back of his thigh, not his belly and inner thigh. Only if Robinson were supine could the bullets have entered his belly and his inner thigh.

[2]The question of the position of Robinson's body when he was shot was largely academic. Lacy identified Murray as the shooter. The question remained, however, how two bullets travelled upwards if the two men were standing.

Detective Bickley further reasoned that a bullet follows a straight line unless it hits something that causes it to change direction.[3] As the State pointed out in its brief, Detective Bickley expressed nothing more than Newton's First Law of Motion—"a body at rest remains at rest[,] and a body in motion remains in uniform motion in a straight line unless acted upon by an external force." *Newton's First Law of Motion*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary /Newton's first law of motion (last visited July 23, 2024). The State also noted that Texas schoolchildren learn Newton's First Law of Motion in middle school. *See* 19 Tex. Admin. Code Ann. § 112.26(a)(1)(C).

Thus, while ballistics is a science, it is not invariably rocket science. An advanced degree or specialized knowledge in ballistics is not always needed to visually compare an entry wound and the trajectory of a bullet. *See Kopycinski*, 2022 WL 1669393, at *5. When evidence is close to the jury's common understanding, a witness's qualifications are less important than when the evidence is well outside the jury's own experience. *Davis v. State*, 313 S.W.3d 317, 350 (Tex. Crim. App. 2010).

A rudimentary process can sometimes help a jury understand the evidence. For example, in *Cherry v. State*, an officer was not allowed to give his opinion concerning the trajectory of the bullets but was allowed to show how he had used a pencil to probe the bullet holes in the walls to determine the angles at which the bullets

---

[3]The only evidence of a ricochet was testimony that one bullet, after leaving Robinson's body, struck a Jeep and fell to the ground near a tire.

penetrated the walls and how he then used strings to extrapolate the bullets' paths across the room before they penetrated the walls. 488 S.W.2d 744, 756 (Tex. Crim. App. 1972). The Texas Court of Criminal Appeals rejected the appellant's argument that the trial court erred by allowing the officer to testify about the trajectory because he was not an expert witness: "[The officer] was properly allowed to express the methods he had utilized[,] and the matters about which he was permitted to testify did not constitute expert opinion testimony." *Id.* at 757. In short, a witness does not necessarily need to be an expert to apply Newton's First Law of Motion.

Relying on his review of the evidence and on his experience, Detective Bickley opined that Robinson must have been either falling backwards or supine when bullets two and three struck him because the bullets travelled upward—unlike bullet one, which traversed Robinson's body from the chest to the back.[4] Detective Bickley had extensive relevant experience. He had a lifelong familiarity with firearms, trained with firearms "all the time," had been a police officer for fifteen years, had been a detective for five years, had worked on sixty to seventy homicides, and had seen numerous entrance and exit wounds.

Murray also complains about Detective Bickley's assessment that the murder was an "execution-style" shooting. For that opinion, however, Detective Bickley relied on his total investigation, including what he had learned from witnesses, such as Lacy.

---

[4]The medical examiner agreed that, given the path of bullets two and three, they may have struck Robinson while he was lying down.

She testified that once she and Robinson stepped outside, Murray immediately gunned down Robinson without any explanation or discussion. In other words, the shooting was not accidental and was not the product of a heated verbal or physical dispute.

We hold that the trial court did not abuse its discretion by admitting Detective Bickley's testimony. *See Garza v. State*, No. 11-17-00335-CR, 2020 WL 262746, *8–9 (Tex. App.—Eastland Jan. 16, 2020, no pet.) (mem. op., not designated for publication) (holding that trial court did not abuse its discretion by admitting Texas Ranger's testimony that the entrance and exit holes in a protective vest were consistent with a man being shot while lying on his back); *Larrinaga*, 2015 WL 4730710, at *4 (holding that trial court did not abuse its discretion by admitting detective's testimony that based on his investigation and the injuries from the autopsy report, the defendant did not act in self-defense). Accordingly, we overrule Murray's sole point.

### III. Conclusion

Having overruled Murray's sole point, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 25, 2024

9